## Dunn and Biddle's Appeal.    Fry's Estate.

1. F. and his wife, E. L. F., executed a deed of trust of the wife's estate as to one-third thereof in trust to pay over the net rents, issues and profits, interest and income thereof, for and during the lifetime of the said E. L. F., to such persons as she, the said E. L. F., whether covert or sole, may appoint: * * * Provided, that such rents, issues and profits, interest and income, shall not be liable to her debts, contracts or engagements, or the debts, contracts or engagements of her present or any future husband. And from and immediately after the decease of the said E. L. F., then to grant, convey, assign, transfer and set over the said one full, equal, undivided third part of the said trust estate hereby granted and assigned unto such person or persons, and for such use and uses, estate and estates, as she, the said E. L. F., whether covert or sole, by her last will and testament, or any instrument in the nature thereof, shall direct, limit and appoint; and for want of such direction, limitation or appointment, then to grant, convey, assign, transfer and set over. the said one full, equal, undivided third part of the said trust estate hereby granted and assigned unto and to the use of such person or persons, and in such proportions as they would be entitled to under the present intestate laws of the state of Pennsylvania, if the said E. L. F. had survived her husband, and died intestate in said state. F. and his wife were afterwards divorced. *Held*, that the trust was an active one to preserve the *corpus* of the estate for the appointees or heirs and did not fall with the divorce.

2. Earp's Appeal, 25 P. F. Smith 119, and Yarnall's Appeal, 20 P. F. Smith 339, distinguished ; Williams's Appeal, 3 Norris 377, followed.

3. In 1869 E. L. F. made her will, the first clause reciting that it was made " in pursuance and execution of all laws, authorities and powers enabling me to make a last will or appointment in the nature thereof." In the foregoing deed of trust, made in 1875, testatrix reserved to herself the power of appointment by will in the terms therein contained : *Held*, that the will was not a valid execution of this power.

June 22d 1877.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Certiorari to the Court of Common Pleas, No. 3, of *Philadelphia county :* Of January Term 1877, No. 126.

Appeal of C. B. Dunn and George Biddle, executors under the will of Emily L. Fry, deceased, from the decree of the court confirming the report of the auditor to whom was referred the account of the Pennsylvania Company for Insurances on Lives, trustees under a deed of trust executed by Mrs. Fry and her husband.

Emily L. Fry, deceased, was the daughter of John Grigg, also deceased. She was born in the month of August 1840. In August 1858 she was married to Horace B. Fry, and had two children, Nannie McClellan Fry and Reginald Fry, both of whom

are still living.    Mrs. Fry went to Europe in 1865, and remained until 1874, when she returned to New York, remained there two weeks, and went back to Europe.    She came back to this country in May 1875, and died in New York on the 23d of October 1875.

While residing in Paris, Mrs. Fry, who was possessed of an estate of nearly $300,000, made and published her last will and testament.    The will is dated the 18th of June 1869.    Mrs. Fry, on the 23d of October, executed a codicil to the will.    In this will the first clause was : " In pursuance of all laws, authorities and powers enabling me to make a last will or appointment in the nature thereof."    She then, after reserving some personal effects, gives, devises and bequeaths her entire estate to her executors in trust for the benefit of her children and their issue, and in case of the death of both of her children before attaining the age of twenty-one years, without leaving lawful issue, then she directs her trustees, or the survivor, to dispose of her residuary estate, by applying the same to charitable uses in France.

On the 10th day of June 1875, Horace B. Fry and Emily L. Fry, his wife, executed a deed of trust to the Pennsylvania Company for Insurances on Lives and Granting Annuities, of all the estate of said Emily L. Fry, real, personal and mixed, excepting $7000 in nominal amount of the seven per cent. coupon bonds of the New York Central Railroad Company, and $3000 in nominal value of bonds of the Philadelphia and Reading Railroad Company ; also equipages, household furniture, books, pictures, &c., " In trust as respects one full equal undivided third part of the property hereby granted and assigned to pay over the net rents, issues and profits, interest and income thereof, for and during the lifetime of the said Emily L. Fry, to such person or persons as she, the said Emily L. Fry, whether covert or sole, shall appoint from time to time to receive the same by any revocable instrument under her hand, and not by way of anticipation, and in default of such appointment, then into her own proper hands, notwithstanding coverture, and in case of such coverture for her separate use, and the receipt of such person so appointed, or of herself in default of such appointment, shall only be a sufficient discharge therefor.    *Provided*, that such rents, issues and profits, interest and income, shall not be liable to her debts contracts or engagements, or the debts, contracts or engagements of her present or any future husband.    And from and after the decease of the said Emily L. Fry, then to grant, convey, assign, transfer and set over the said one equal undivided third part of the said trust estate hereby granted and assigned unto such person or persons, and for such use and uses, estate and estates, as she, the said Emily L. Fry, shall, whether covert or sole, by her last will and testament, or any instrument in the nature thereof, under her hand and seal, executed in the presence of two or more credible subscribing witnesses, direct, limit and appoint, and for want

of such direction, limitation or appointment, then to grant, convey, assign, transfer and set over the said one full equal undivided third part of the said trust estate hereby granted and assigned unto and to the use of such persons and in ·such proportions as they would be entitled to under the present intestate laws of the state of Pennsylvania, if the said Emily L. Fry had survived her husband and died intestate in the state of Pennsylvania while an inhabitant thereof, seised and possessed in her own right of said equal undivided third part of said trust estate, and if the real estate therein included were situate in said state of Pennsylvania." The other two-thirds of the estate were conveyed in trust for the two children, and in the event of their death without issue, to such person or persons as they might by will or other instrument constitute, limit and appoint to receive the same, and in default of such will or appointment then the estate was to be conveyed as in the case of the third named above. There was no dispute about these two-thirds. On the 7th of September 1875, Horace B. Fry and Emily L. Fry were absolutely divorced from the bonds of matrimony under proceedings instituted· by Horace B. Fry *v.* Mrs. Fry, in the Circuit Court of Dubuque county, Iowa, and Mrs. Fry died on the 23d day of October following.

Shortly after Mrs. Fry's death the Pennsylvania Company filed their account as trustees, which was referred to an auditor, before whom appeared the executors and the Fidelity Insurance, Trust and Safe Deposit Company, the former claiming one equal undivided third part of the entire trust estate under the provisions of the will, and the latter claiming the entire trust estate as guardian of the two minor children, under the. provisions of the deed of trust. ·

The auditor was of opinion that the trust created in the deed executed by Horace B. Ery and Emily L., his wife, dated June 10th 1875, was an active one, and continued to the day of the death of Emily L. Fry, and that the will of Mrs. Fry was revoked and of no effect, and he, therefore, awarded the whole trust estate to the Fidelity Company.·

The exceptions filed to this report were dismissed by the court, Ludlow, P. J., saying:

" Under no circumstances can we interpret the will of Mrs. Fry, made many years before the deed of 1875 was executed, as an execution of a power of appointment contained in that deed. The question is always one of intention, and though a will is ambulatory until the death of the testator, yet the very fact that it was made in 1869, and was not republished, rebuts any presumption of an intent to execute a power not then in existence.

" It is argued that although no execution of a power can be established, yet the trust cannot be sustained, inasmuch as the divorce terminates the marital relations.

[Dunn and Biddle's Appeal.]

" It would be sad indeed, if the very object of the trust should thus, through a technicality, perish. Such might have been the case after Ogden's Appeal was decided, but the recent authorities cited by the auditor, are, we think, strong enough to enable us to decide that this trust is yet active and must be sustained. It was not merely a trust during coverture, but also whether covert or sole."

The action of the court in dismissing the exceptions and confirming the report was assigned for error by the executors, who took this writ

*A. Sydney Biddle* and *George W. Biddle*, for appellants.—The gift to Mrs. Fry of one-third part of the trust estate in question constituted a trust for her sole and separate use, and gave her a legal estate at the termination of the marital relation: Dodson *v.* Ball, 10 P. F. Smith 496; Mackason's Appeal, 6 Wright 330; Nice's Appeal, 14 Id. 144; Megargee *v.* Naglee, 14 P. F. Smith 216; Yarnall's Appeal, 20 Id. 338; Ogden's Appeal, Id. 502; Rife *v.* Geyer, 9 Id. 396.

Mrs. Fry, upon becoming discovert, took an estate in fee simple, in the one-third of her trust estate: Dodson *v.* Ball, *supra;* Ralston *v.* Waln, 8 Wright 279; Physick's Appeal, 14 Id. 128; Nice's Appeal *supra;* Guthrie's Appeal, 1 Wright 16.

The will was not revoked by the deed of trust and was a good execution of the power reserved to herself under said deed: Patch *v.* Shore, 2 Drew. & Smale 591; Act of Assembly April 8th 1833, Purd. Dig. 1476, pl. 16; Wogan *v.* Small, 11 S. & R. 145; Balliet's Appeal, 2 Harris 459; Thomas *v.* Jones, 1 DeGex, J. & S. 63; Act of Assembly of 1833, Purd. Dig. 1476, pl. 11; Thomas *v.* Jones, 31 Law Journal Rep. Ch. 733, and 2 Johnson & Hemming 475: Cofield *v.* Pollard, 5 Weekly Rep. 774.

*Thomas J. Diehl* and *William A. Porter*, for appellees.—A general devise, however unlimited in its terms, will not comprehend the subject of a power unless it refer to the power itself: Sugden on Powers 385. There is no authority that holds that a general power of appointment was executed by the donee of the power in an instrument of anterior date to that which created the power itself: Bingham's Appeal, 14 P. F. Smith 349. The intention of the party, where the power is general, is to be sought only in the instrument by which the appointment is made: Thompson *v.* Garwood, 3 Whart. 287. Mrs. Fry's will, executed six years before the creation of the power, contained no reference to this power, as was in the nature of the case impossible.

The deed was a revocation of the will: Balliet's Appeal, 2 Harris 460; Leigh *v.* Norbury, 13 Vesey 339.

The deed of trust was not intended for coverture only, but it was intended that it should operate on this one-third if the parties

4 NORRIS—7

should afterwards become discovert, either by a natural or legal dis-
solution of the marriage relation : Earp's Appeal, 25 P. F. Smith
119 ; Ashhurst's Appeal, 27 Id. 464 ; Ash's Appeal, 30 Id. 497.

Chief Justice AGNEW delivered the opinion of the court, June
26th 1877.

It was not quite accurate to say, as the learned judge below did,
that the trust in Mrs. Fry's deed might have perished, if it had
been determined under Ogden's Appeal.   Ogden's Appeal has not
been impaired by the subsequent cases : Earp's Appeal, 25 P. F.
Smith 119 ; Ashhurst's Appeal, 27 Id. 464 ; Ash's Appeal, 30 Id.
497, and some others, are plainly distinguishable from both Yarnall's
and Ogden's Appeals, 20 P. F. Smith 501.   The grounds are broad
and clearly visible, and were stated in Earp's Appeal, which the
other cases mentioned followed.    This distinction has been re-stated
in the recent case of Williams's Appeal, 2 Norris 377.   In that
case there were two instruments creating several trusts of a very
different character, but which the auditor and the court below
confounded, one of which was governed by Ogden's Appeal and
similar cases, and the other by Earp's Appeal and its sequents,
and so we held.

Mrs. Fry's deed is plainly governed by the principles stated in
Earp's Appeal and is quite as easily distinguished from Ogden's
Appeal.   The trust created by her was, "to pay over the net
*rents, issues and profits, interest and income* thereof for and during
*the lifetime* of the said Emily L. Fry," to her appointee or herself,·
"whether *sole or covert*," and "in *case* of such coverture for her
separate use."    Then follows a proviso which gives character to
the trust for her life, and shows that it was intended for her pro-
tection without regard to coverture, "provided that such rents,
issues and profits, interest and income, shall ·not be liable to *her*
debts, contracts or engagements, *or* the debts, contracts or engage-
ments of her present or *any future* husband."    Thus she clearly
indicated her intention to protect herself against her own acts as
well as those of any husband, present or future.   A trust for *co-
verture* only, falls at the death of the first husband, but this she
intended to be carried over to any future husband, and in connection
with the provision against her own debts she discovers a plain
intention to make the trust for *life* and not for coverture merely.·

Mrs. Fry's trust for her *own* life is very similar to that in Ash's
Appeal, in which the same expressions occur, to wit : "whether
sole or covert."   Her trust not being for coverture merely, and
being equitable and of the income only and for life, was active, and
did not fall with the divorce, and therefore could not coalesce with
the remainder for her heirs, which was legal.   The exclusion of the
husband from the descent or succession, in the language defining
the persons to take under the intestate law, was therefore an immate-

[Dunn and Biddle's Appeal.]

rial circumstance, as the rule in Shelly's case would not operate under any circumstances. The language used in Earp's Appeal, distinguishing it from Yarnall and Ogden's Appeals, is quite as applicable to this case.

Mrs. Fry's will, made long before she declared this trust, and not republished, cannot operate as an appointment under her deed. There are some plausible considerations which might be argued to make the will an appointment under the deed of trust, but upon a careful review of the entire subject we think the intention to execute this posterior power cannot be fairly inferred from the antecedent will, without a republication. This subject was discussed in Bingham's Appeal, 14 P. F. Smith 349.

The decree of the Common Pleas is affirmed, with costs to be paid by the appellants, and the appeal is dismissed.