## Mitchell's Estate.

*Wills Act of June 7, 1917, sect. 11—Wills—Construction—Powers—Blending of estate of donee and donor — Transfer Inheritance Tax Act of June 20, 1919.*

1. Where the testator died in 1924, having executed a will in 1885, by which he expressly directed his debts to be paid and then devised all his estate to his wife, and in 1887 his father died and in 1891 his mother, leaving wills which gave him general powers of appointment over both of their estates, his will is a good execution of the powers under sections 1 and 3 of the Act of June 4, 1879, P. L. 88, re-enacted by sections 9 and 11 of the Wills Act of June 7, 1917, P. L. 403, but it cannot be inferred that he intended to make the donors' estates his own for all purposes, including the payment of legacies and the tax thereon, and, hence, the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, not being retroactive, has no application.

2. It does not follow that, because the donee of a power has subjected the appointed estate to his debts, he thereby intends to make it his own for all purposes, including the payment of legacies and the tax thereon.

3. The blending of the two estates is a matter of the testator's intention to be gathered from the language of his will.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1925, No. 3426.

Wilson Mitchell, the testator, died Oct. 15, 1924, having first made a will dated May 12, 1885, in which he appointed his wife, Fanny E. Mitchell, executrix, to whom letters testamentary were duly granted. The relevant clauses of the will were as follows:

"First I direct that all my just debts and funeral expenses be paid by my executrix hereinafter named as soon as conveniently may be after my decease.

"Second I give devise and bequeath all my estate real personal and mixed of which I may die seized or possessed or to which I may be entitled at the time of my death unto my wife Fanny E. Mitchell to hold to her, her heirs, executors, administrators and assigns forever absolutely and in fee."

The Auditing Judge, LAMORELLE, P. J., said in his adjudication, *inter alia:*

"If an express direction to pay legacies is to be construed as meaning that they are to be paid out of the donee's own property, if that be sufficient for the purpose, *a fortiori*, a direction to pay the debts of the decedent and funeral expenses must mean that they are to be paid out of the donee's own property where it is sufficient, and in the instant case it appears from the inventory and appraisement that testator's own property amounted to over $38,000, and the total credits, including the commissions not only on his own estate, but also on the appointed property, amounted to approximately $8500. Where the debts of the decedent are in excess of his own property, it is possible that a direction to pay debts should be construed as effecting a blending for all purposes, but that is not this case.

"Counsel for the Commonwealth relies on Finn's Estate, No. 2, 18 Dist. R. 408, and Stokes's Estate, 20 W. N. C. 48. Those cases are based on the assumption that it is impossible to determine, prior to the time of the audit of the account of the executor of the donee, whether his debts will or will not be in excess of his individual property, and that the property, over which the donee has the power to appoint, is liable for the payment of the donee's debts, if such proves to be the case. It was for that reason that the court awarded the fund, not directly to the appointees under the will of the donee, but to the executor of the will of the donee. Many instances may occur where it is desirable for administrative purposes to award the fund to the executor of the will of the donee, but that does not necessarily determine that there is such a blending of the donee's estate with that of the donor as to make the latter's estate pass as the estate of the donee for tax purposes.

"Nor does the Auditing Judge consider the language 'to which I may be entitled at the time of my death' of any significance. What he probably intended to say was not only the property he owned at the time of the execution of the will, but any property that he might thereafter acquire, should pass under his will. To attribute a broader meaning than that would seem to be mere conjecture and not construction."

*William M. Boenning*, for Commonwealth; *Arthur E. Weil*, contra.

GEST, J., April 9, 1926.—The testator, having general powers of testamentary appointment over the estates of his father and mother, of which he was life-tenant, did not expressly refer to these powers in his will, but did expressly direct that his debts be paid, and then he devised all his estate to his wife; and this general devise, under section 11 of the Wills Act of June 7, 1917, P. L. 403, is construed to include the estate which he had the general powers to appoint, and operates as an execution of the powers. Except for this act of assembly, there would be no execution of the powers, and the estates subject thereto would pass, under the wills of the donors, in default of such appointments.

The Commonwealth claims that the appointed estates passing to the widow are subject to 2 per cent. inheritance tax, under the Act of June 20, 1919, P. L. 521, according to the doctrine of McCord's Estate, 276 Pa. 459, and Forney's Estate, 280 Pa. 282; whereas, if the appointed estates pass as the estates of the donors of the powers, who died in 1887 and 1891 respectively, the Act of May 6, 1887, P. L. 79, applies, under which estates passing to a daughter-in-law are not subject to tax.

The differences between the will of the donee of the powers in this case and that of the donee of the power in McCord's Estate are so patent that it is not necessary to specify them in detail. As the Supreme Court said of the trust fund in McCord's Estate, it became blended with the donee's other property as one estate from which debts and legacies were payable; she made the trust fund a part of her own estate and then distributed the whole to the objects of her bounty, who took as her legatees. The Auditing Judge ruled the present case under the authority of Huddy's Estate, 236 Pa. 276, where the Supreme Court said: "Since there are sufficient funds in the estate of the donee to pay her pecuniary legacies in full, there is no necessity for applying the Act of 1879" (supplied by section 11 of the present Wills Act of 1917) "so as to throw them upon the trust fund, as the law will not assume that the donee of the power intended so to exercise it." Huddy's Estate, on which the Auditing Judge relies, is distinguished from the present case by the learned counsel for the Commonwealth on the ground that there was in the former case no direction to pay debts, but the principle of the case and the language of the Supreme Court are relevant here, because the blending of the appointed estate with that of the donee depends upon the intention of the donee as shown in his will. Where the donee directs his debts to be paid and devises the residue of his estate to his beneficiaries, and the residuary clause operates as an execution of the power under the act of assembly, it may be clear enough that he intends his debts to be paid from the appointed estate if his own is not sufficient. In the present case the donee does not devise the residue of his estate in terms, and it might be questioned whether he even made the appointed estate liable for his debts.

It was in accordance with our settled practice that the Auditing Judge, who audited the accounts in the estates of the donee's father and mother, awarded the trust funds to the executor of the donee. This procedure, as the Auditing

Judge in the present case observes, is desirable for administrative purposes, because the donee's creditors have a right to their day in court and an opportunity to present their claims, which they can only do at the audit of the executor's account. The practice is illustrated in Brown's Estate, 17 Dist. R. 569, and Fisher's Estate, 16 Dist. R. 151, and we do not think that any greater weight, so far as the present question is concerned, should be attached to Finn's Estate, No. 2, 18 Dist. R. 408, and Stokes's Estate, 20 W. N. C. 48, which last case is approved in Kates's Estate, 282 Pa. 417.

But it does not follow that because the donee of a power has subjected the appointed estate to his debts, he thereby intends to make it his own for all purposes, including the payment of legacies and the tax thereon. The direction to pay debts may, indeed, be a factor in the solution of the problem, but it is not decisive: Haven's Estate, 5 D. & C. 494; Hagen's Estate, 85 Pa. Superior Ct. 123; 285 Pa. 326. The blending of the two estates is, as we have said, a matter of the testator's intention, and this actual intention can only be gathered from what he has said in his will. The general devise in this case operates only by virtue of the act of assembly, which supplies a canon of construction, taking effect in all cases in the absence of a contrary intention appearing by the will. As the Supreme Court said in Bingham's Appeal, 64 Pa. 351, in speaking of section 27 of the Wills Act of 1st Vict., from which our Act of 1879 was derived: "This effect is produced by operation of law, not by the words of the will. It is manifest that no possible judicial interpretation of the words 'my personal estate' can make them mean the estate of another. It is simply a legal effect or operation of law by statutory construction which can do so." The will of the donee, Wilson Mitchell, was executed in 1885, before the deaths of his father in 1887 and of his mother in 1891, so that, under Dunn and Biddle's Appeal, 85 Pa. 94; Vaux's Estate, 11 Phila. 57, and Murray's Estate, 5 W. N. C. 296, the donee's will could not have operated in execution of the powers subsequently created were it not for the operation of the Act of 1879: Pennsylvania Co.'s Account, 264 Pa. 433; Farwell on Powers (2nd ed.), 222, et seq. But it is very apparent that when the donee made his will in 1885, before he was vested with the powers of appointment, he could not have had any intention whatever of blending these trust estates with his own.

The exceptions are dismissed and the adjudication confirmed absolutely.

LAMORELLE, P. J., and HENDERSON, J., absent.